1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAVU, INC.,

        Plaintiff,

    v.

OMNIPAK CORPORATION,

        Defendant.

Case No.  C06-109RSL

ORDER GRANTING IN PART AND
DENYING IN PART MOTION
FOR CLASS CERTIFICATION

## I.  INTRODUCTION

This matter comes before the Court on a motion for class certification filed by plaintiff Kavu, Inc. ("Kavu").  (Dkt. #23).  Plaintiff alleges that defendant Omnipak Corporation ("Omnipak") sent it an unsolicited advertisement via facsimile in violation of federal and Washington law.  Plaintiff seeks to represent a class of people who received the same facsimile.  At defendant's request, the Court heard oral argument in this matter on January 23, 2007.

For the reasons set forth below, the Court finds that class certification is warranted but narrows the proposed class.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR CLASS CERTIFICATION - 1

## II.  DISCUSSION

**A.      Factual Background.**

Plaintiff Kavu operates an outdoor clothing and accessories business in Seattle. Omnipak is a small corporation, employing seven people, that sells packaging material to manufacturers and suppliers of goods.  It does not generally sell to the retail market.

On August 13, 2005, Kavu received a one-page unsolicited advertisement by facsimile from Omnipak.  Kavu had never done business with Omnipak and did not request the facsimile.  On or around that day, Omnipak sent the same facsimile ("the facsimile") to approximately 3,000 entities in Washington, Oregon, Montana and Idaho. Omnipak obtained the recipients' facsimile numbers from Manufacturers' News, a company that apparently compiles contact information for businesses and sells the compilations as databases to third parties.  Manufacturers' News' website states that it obtains information about businesses from various public sources, then contacts the businesses periodically to update the information and ensure accuracy.  Declaration of James Johnson, (Dkt. #34) ("Johnson Decl."), Ex. A.  Prior to sending the facsimile, Omnipak had never before sent a broadcast facsimile, and it has not done so since.

Kavu asserts that as a result of receiving the facsimile, it experienced damages due to the loss of its paper and toner, the temporary loss of use of its facsimile machine, the potential loss of business while its facsimile machine was in use, and a violation of its right to privacy.  Kavu alleges violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.  The TCPA prohibits, among other things, "use of any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" absent certain conditions.  47 U.S.C. § 227(b)(1)(C).  The TCPA does not prohibit sending an unsolicited advertisement if the

ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR CLASS CERTIFICATION - 2

1  facsimile contains a notice that meets certain requirements, *and* the sender either has an

2  established business relationship with the recipient or the sender obtained the facsimile

3  machine number through "a directory . . . to which the recipient voluntarily agreed to

4  make available its facsimile number for public distribution."  47 U.S.C. §

5  227(b)(1)(C)(ii)(II).  An "unsolicited advertisement" is one that is "transmitted to any

6  person without that person's prior express invitation or permission, in writing or

7  otherwise."  47 U.S.C. § 227(a)(5).

8       Kavu also alleges that Omnipak violated the Washington Unsolicited Facsimile

9  Act ("WUTA"), RCW 80.36.540, and the Washington Consumer Protection Act

10  ("CPA"), RCW 19.86 *et seq.*  The TCPA and the WUTA provide for a $500 penalty for

11  sending an unsolicited facsimile.  47 U.S.C. § 227(b)(3)(B); RCW 80.36.540(2).  The

12  TCPA provides for trebling the penalty if the sender "willfully or knowingly" violated the

13  Act.  47 U.S.C. § 227(b)(3).  A violation of the WUTA is also a violation of the CPA.

14  The CPA provides for attorney's fees and the discretionary trebling of actual damages up

15  to $10,000.

16       Plaintiff filed its complaint in King County Superior Court.  Defendant removed

17  the case to this Court based on the Class Action Fairness Act of 2005 ("CAFA"), Pub. L.

18  No. 109-2.

19       Plaintiff seeks to represent the following class:

20       All persons who received an unsolicited advertisement promoting "Omnipak's
         Summer Bag Special is here" via facsimile from Defendant during the period of
21       time defined by the applicable statute of limitations.

22  Plaintiff seeks to represent a nationwide class for the TCPA claim, and a Washington

23  state subclass for the WUTA and CPA claims.

24

25

26  ORDER GRANTING IN PART AND DENYING IN
    PART MOTION FOR CLASS CERTIFICATION - 3

1    **B.    Subject Matter Jurisdiction.**

2        As an initial matter, this Court must determine if it has subject matter jurisdiction

3    over this dispute.  Plaintiff has raised the issue, although both parties assert that this

4    Court has jurisdiction.  Section 227(b)(3) of the TCPA provides a private right of action

5    under the statute and states that a "person or entity may, if otherwise permitted by the

6    laws or rules of court of a State, bring in an appropriate court of that State" an action for

7    injunctive relief or damages.  Courts have interpreted that section to mean that the statute

8    does not provide a basis for federal court jurisdiction.  See, e.g., Murphey v. Lanier, 204

9    F.3d 911, 915 (9th Cir. 2000) (explaining that state courts have "exclusive jurisdiction"

10   over TCPA claims; "the failure to provide for federal jurisdiction indicates that there is

11   none").  Although the holding in Murphey is broadly phrased, that case did not involve or

12   address diversity jurisdiction.  Nor does the opinion appear to preclude district courts

13   from hearing TCPA claims where some other independent basis for jurisdiction exists.

14   Two circuit courts have subsequently held that federal courts have diversity jurisdiction

15   over private causes of action brought under the TCPA.  Gottlieb v. Carnival Corp., 436

16   F.3d 335 (2d Cir. 2006); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir.

17   2005); see also Kopff v. World Research Group, LLC, 298 F. Supp. 2d 50, 55 (D.D.C.

18   2003).  In Brill, the court held that defendants properly removed the TCPA case under

19   CAFA.

20       Similarly, in this case, jurisdiction is alleged to exist based on CAFA, which was

21   enacted after Murphey.  Under 28 U.S.C. § 1441(a), a defendant may remove an action

22   from state court to a federal court that has original jurisdiction over the action.  CAFA

23   gave federal district courts original jurisdiction over class actions where the amount in

24   controversy exceeds $5 million and at least one class member and at least one defendant

25

26   ORDER GRANTING IN PART AND DENYING IN
     PART MOTION FOR CLASS CERTIFICATION - 4

1  are citizens of different states.  28 U.S.C. § 1332(d).   In this case, both the amount in

2  controversy requirement and the minimal diversity requirements are met.  Amended

3  Complaint at ¶¶ 4, 5 (alleging that plaintiff is a Washington corporation and defendant is

4  an Oregon corporation); Notice of Removal at p. 2 (alleging, based on a good faith belief,

5  that the amount in controversy exceeds $5 million, based on facsimiles allegedly sent to

6  hundreds of persons, statutory damages of $500 per violation and the potential for treble

7  damages).  In addition, 28 U.S.C. § 1441(a) allows a defendant to remove any action

8  supported by diversity of citizenship "except as otherwise expressly provided by Act of

9  Congress."  No act of Congress precludes removal.  Although CAFA contains explicit

10  provisions precluding removal of some types of cases, none of those provisions applies

11  here.

12       Accordingly, this Court has subject matter jurisdiction over this matter based on

13  CAFA.  Removal was proper.

14  **C.**    **Federal Rule of Civil Procedure 23(a) Requirements.**

15       A party seeking to certify a class must establish that the requirements of Federal

16  Rule of Civil Procedure 23 are met.  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 617

17  (1997).  A court must engage in a "rigorous analysis" to determine whether the

18  requirements of Rule 23 are satisfied.  <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S.

19  147, 161 (1982).  However, the evidentiary showing need not be extensive.  <u>Blackie v.</u>

20  <u>Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975).

21       The following prerequisites must be established under Rule 23(a):

22       (1) the class is so numerous that joinder of all members is impracticable, (2)
           there are questions of law or fact common to the class, (3) the claims or

23       defenses of the representative parties are typical of the claims or defenses
           of the class, and (4) the representative parties will fairly and adequately

24       protect the interests of the class.

25

26  ORDER GRANTING IN PART AND DENYING IN
    PART MOTION FOR CLASS CERTIFICATION - 5

1    Omnipak sent the facsimile to at least 3,000 entities.[1]  Based on that admission, the

2    Court finds, and defendant does not dispute, that joinder of all potential class members

3    would be impractical, and the numerosity factor is satisfied.

4         **1.      Commonality.**

5         Courts have described the showing required to meet the commonality requirement

6    as "minimal" and "not high."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.

7    1998); Mortimore v. F.D.I.C., 197 F.R.D. 432, 436 (W.D. Wash. 2000).  Defendant

8    argues that the commonality requirement is not satisfied because a key, and individual,

9    issue will be whether each class member gave permission to receive facsimiles from

10   Omnipak.  If they did, then the facsimile was not "unsolicited" as defined by the statute.

11   Omnipak notes that several other courts have denied class certification because of the

12   individual nature of that issue.  See, e.g., Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp.

13   1162, 1169 (S.D. Ind. 1997) (declining to certify class where the definition of the

14   proposed class "would require the Court to address the central issue of liability"

15   regarding "whether each potential class member had invited or given permission" to

16   receive the facsimiles); Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995)

17   (same).  In this case, however, Kavu has not defined the class in such a way as to require

18   an inquiry into the merits to determine if an entity is a member of the class.  Rather, class

19   membership can be determined based on objective criteria.

20        Notably, whether the facsimile was "unsolicited" appears to be more of a common

21   issue in this case than in the cases that denied class certification.  Omnipak alleges that it

22

23        [1] Plaintiff alleges that it has learned through discovery that over 8,000 "numbers

24   were faxed between July 29 and August 14, 2005."  Declaration of Rob Williamson,
     (Dkt. #37) ("Williamson Decl.") at ¶ 5.

25

26   ORDER GRANTING IN PART AND DENYING IN
     PART MOTION FOR CLASS CERTIFICATION - 6

1   obtained all of the recipients' facsimile numbers from the Manufacturers' News database.

2   Therefore, whether the recipients' inclusion in the Manufacturers' News database

3   constitutes express permission to receive advertisements via facsimile is a common issue.

4   In fact, plaintiff has provided some authority, albeit incomplete,[2] from the Federal

5   Communications Commission ("FCC") stating that if a sender "obtains the number from

6   sources of information compiled by third parties – *e.g.*, . . . commercial databases . . . –

7   the sender must take reasonable steps to verify that the recipient consented to have the

8   number listed . . . ."  Williamson Decl., Ex. C.  If the FCC's opinion, or similar

9   authority,[3] is credited and defendant took no steps to verify consent, then there would be

10  no need for individual evidence on the permission issue.  In contrast, in the cases relied

11  on by defendant, the issue of whether each potential class member gave permission to

12  receive the facsimiles was key.  <u>See, e.g.</u>, <u>Kenro, Inc.</u>, 962 F. Supp. at 1169; <u>Forman</u>, 164

13  F.R.D. 400.  Those defendants did not, as defendant does here, assert that they received

14  the facsimile numbers and consent to receive facsimiles from the recipients' inclusion in a

15  database.

16        Other common issues include whether the facsimile's notice provision violated the

17  TCPA, and if so, whether the violation was "immaterial" as Omnipak alleges.  The TCPA

18  will apply to all class members, and Washington law will apply to all members of the

19  Washington subclass.  Furthermore, it is undisputed that Omnipak engaged in a common

20  course of conduct by obtaining the facsimile numbers in the same way and sending the

21

22

_____

23        [2] The Court renders no opinion on the admissibility or persuasiveness of the FCC's

24  opinion, as only a small portion was provided without any context.

25        [3] <u>See also</u> 47 C.F.R. § 64.1200(a)(3).

26  ORDER GRANTING IN PART AND DENYING IN
    PART MOTION FOR CLASS CERTIFICATION - 7

1    same broadcast facsimile[4] to all recipients within a short period of time as part of the

2    same effort to generate new business.  Because Omnipak engaged in the same conduct

3    with respect to all recipients, the issue of whether its conduct was willful will be

4    common.  Additional common issues include Manufacturers' News' practices in

5    compiling its database, the circumstances surrounding Omnipak's purchase and use of the

6    database, and which party bears the burden of proving whether the recipients gave

7    permission to receive the facsimiles.

8            Accordingly, the commonality requirement is met.

9        **2.    Typicality.**

10           The typicality element requires that the claims or defenses of the proposed class

11   representatives be typical of the claims or defenses of the class they seek to represent.

12   Typicality has been interpreted to mean that "a class representative must be part of the

13   class and 'possess the same interest and suffer the same injury' as the class members."

14   Falcon, 457 U.S. at 156 (quoting East Texas Motor Freight Sys., Inc. v. Rodriguez, 431

15   U.S. 395, 403 (1977)).  In this case, defendant does not dispute that plaintiff is part of the

16   class it seeks to represent and suffered the same injury.  Omnipak argues that Kavu's

17   claims are factually different from the class because no representative of Kavu spoke with

18   a representative of Manufacturers' News.  The record, however, does not include any

19   evidence from Manufacturers' News and does not support Omnipak's assertion that

20   Manufacturers' News representatives spoke with recipients of the facsimile.  Even if they

21   had, the typicality element is still met because Kavu's claims arise from the same alleged

22   course of conduct and are based on the same legal theories.  "When it is alleged that the

23   same unlawful conduct was directed at or affected both the named plaintiff and the class

24   _____

25           [4] The parties appear to agree that all recipients received the same facsimile.

26   ORDER GRANTING IN PART AND DENYING IN
     PART MOTION FOR CLASS CERTIFICATION - 8

1   sought to be represented, the typicality requirement is usually satisfied, irrespective of

2   varying fact patterns which underlie individual claims." Smith v. Univ. of Wash. Law

3   Sch., 2 F. Supp.2d 1324, 1342 (W.D. Wash. 1998) (internal citations omitted)

4   (explaining, "Typicality turns on the defendant's actions toward the plaintiff class, not

5   particularized defenses against individual class members").

6          Defendant also argues that plaintiff fails to meet the typicality element because its

7   claims are subject to unique defenses and dominated by individual issues.  Although the

8   presence of *unique* defenses can undermine the typicality element, Omnipak's defenses to

9   plaintiff's claims are not unique.  Instead, it will no doubt assert the same defense for

10  most if not all of the class members' claims: that recipients consented to receive

11  advertisements via facsimile by providing their contact information to Manufacturers'

12  News.  Therefore, the assertion of that defense does not render plaintiff's claims atypical.

13  However, Omnipak has also provided some evidence that approximately 100 of the

14  recipients were existing customers.  Johnson Decl. at ¶ 6 ("We know from a subsequent

15  examination of our phone records that it appears that we attempted to fax close to 100 of

16  our current customers when we sent out our 'broadcast fax'").  The statute provides a

17  defense for sending facsimiles to entities with whom the sender has an established

18  business relationship.  Because that defense will be unique to a small portion of the

19  proposed class, the Court will exclude Omnipak's existing customers from the class.  See,

20  e.g., Carnett's, Inc. v. Hammond, 279 Ga. 125, 129 (2005) (declining to certify a TCPA

21  class, based on lack of commonality, where some of the recipients "likely" had an

22  established business relationship with defendant and plaintiff did not exclude those

23  recipients from the proposed class).  Determining which recipients had established

24  business relationships with defendant should be a relatively straightforward matter using

25

26  ORDER GRANTING IN PART AND DENYING IN
    PART MOTION FOR CLASS CERTIFICATION - 9

1  objective evidence.  With that exclusion, the proposed class meets the typicality

2  requirement.

3      **3.      Adequacy.**

4      The adequacy element requires that (1) the named plaintiff must be able to

5  prosecute the action vigorously through qualified counsel, and (2) the representative

6  cannot have antagonistic or conflicting interests with the unnamed members of the class.

7  See, e.g., Smith, 2 F. Supp.2d at 1343.  Plaintiff has qualified counsel who have

8  represented plaintiffs in numerous class actions, and defendant does not challenge

9  counsel's qualifications.  In addition to seeking the same relief as other class members,

10 Kavu's Chief Financial Officer has stated that the company is willing to undertake and

11 understands the responsibilities of being a class representative.  Declaration of Joe

12 Pinsoneault, (Dkt. #26) ("Pinsoneault Decl.") at ¶¶ 4-8.  Defendant does not challenge

13 plaintiff's adequacy as a representative, and the Court finds that it is adequate.

14 **D.    Federal Rule of Civil Procedure 23(b) Requirements.**

15      In addition to the Rule 23(a) prerequisites, plaintiff must also demonstrate that the

16 class action is maintainable pursuant to Rule 23(b).

17      **1.      Fed. R. Civ. P. 23(b)(2).**

18      Plaintiff argues that certification is appropriate under Fed. R. Civ. P. 23(b)(2),

19 which requires a court to find that "[t]he party opposing the class has acted or refused to

20 act on grounds generally applicable to the class, thereby making appropriate final

21 injunctive relief or corresponding declaratory relief with respect to the class as a whole."

22 The Court must consider whether "the predominant relief is injunctive and declaratory."

23 Beck v. The Boeing Co., 203 F.R.D. 459, 465 (W.D. Wash. 2001), vacated in part on

24 other grounds, 60 Fed. Aprx. 38 (9th Cir. 2003); see also Molski v. Gleich, 318 F.3d 937,

25

26 ORDER GRANTING IN PART AND DENYING IN
   PART MOTION FOR CLASS CERTIFICATION - 10

1  947 (9th Cir. 2003) (explaining that "the claim for monetary damages must be secondary

2  to the primary claim for injunctive relief;" focusing on the language of the rule and

3  plaintiff's intent in bringing the suit).  The "predominance" element requires the Court to

4  consider whether "plaintiffs would have brought suit to obtain the injunctive relief they

5  seek even if they could not obtain a money recovery."  Beck, 203 F.R.D. at 466.

6  Defendant argues that injunctive relief cannot be the primary goal because it is "unlikely"

7  that Kavu would have brought this action without the monetary relief allowed under the

8  statutes.  However, it is more unlikely that Kavu would undertake this action, particularly

9  as a class representative, for a recovery that is unlikely to exceed $500.  Furthermore,

10  Kavu's representative states that Kavu "receives large numbers of unwanted facsimile

11  advertisements every year" and its "primary interest in bringing this action is to stop

12  companies like Defendant from continuing the practice of sending unsolicited facsimile

13  advertisements."  Pinsoneault Decl. at ¶ 7.  Defendant also asserts that injunctive relief is

14  unnecessary because it is willing to stipulate that it will not send unsolicited facsimiles

15  again.  It did not make that promise before plaintiff filed this lawsuit, and plaintiff is not

16  required to take defendant at its word.  Moreover, injunctive relief need not be the only

17  relief sought.

18      Defendant also cites two cases, neither of which involved a TCPA claim, which

19  found that certification under Rule 23(b)(2) was inappropriate because plaintiffs' requests

20  for punitive damages predominated over their claims for injunctive relief.[5]  It does not

21  appear that the incidental statutory damages here are punitive damages.  Regardless,

22

23

24      [5] Defendant's Opposition at p. 13 (citing Taylor v. Flagstar Bank, FSB, 181 F.R.D.
509, 518 (M.D. Ala. 1998) and Hernandez v. United Fire Ins. Co., 79 F.R.D. 419, 429

25  (N.D. Ill. 1978)).

26  ORDER GRANTING IN PART AND DENYING IN
PART MOTION FOR CLASS CERTIFICATION - 11

1  defendant has not cited any cases declining to certify a TCPA class on that basis.  In fact,

2  a Washington court recently certified a class asserting TCPA claims under Washington

3  Rule of Civil Procedure 23(b)(2), which is equivalent to the federal rule.  <u>Transportation</u>

4  <u>Instit. v. Promo Dart, Inc.</u>, No. 6-2-03460-1SEA (King County Superior Court, November

5  9, 2006).  In addition, the damages sought are incidental to the primary claim for

6  injunctive relief because damages are statutory and a fixed amount.  Accordingly,

7  damages may be awarded based on objective standards rather than based on complex,

8  individual determinations.  <u>See, e.g.</u>, <u>Sitton v. State Farm Mut. Auto Ins. Co.</u>, 116 Wn.

9  App. 245 (2003).  In this case, damages will be (1) nothing, if defendant prevails on its

10  argument that its violations were "immaterial," (2) $500 if it does not prevail on that

11  claim, or (3) $1,500 if the Court finds that its conduct was willful.  Because defendant

12  engaged in the same conduct regarding all of the class members, the damages issues and

13  calculations will be the same for all.  Moreover, if plaintiff proves its allegations,

14  injunctive relief would benefit all class members.

15         For all of these reasons, the Court finds that certification under Rule 23(b)(2) is

16  appropriate because Omnipak has acted on grounds generally applicable to the class, and

17  final injunctive or declaratory relief is appropriate for the class.

18         **2.     Fed. R. Civ. P. 23(b)(3).**

19         Plaintiff also contends that class certification is appropriate under Fed. R. Civ. P.

20  23(b)(3), which requires a court to find

21         that the questions of law or fact common to the members of the class
           predominate over any questions affecting only individual members, and that
22         a class action is superior to other available methods for the fair and efficient
           adjudication of the controversy.
23

24         The purpose of this rule is to identify those actions in which certification of a class

25  "would achieve economies of time, effort and expense, and promote uniformity of

26  ORDER GRANTING IN PART AND DENYING IN
    PART MOTION FOR CLASS CERTIFICATION - 12

1  decision as to persons similarly situated, without sacrificing procedural fairness or

2  bringing about other undesirable results." Fed. R. Civ. P. 23 advisory committee's note

3  (1966).  When considering whether common questions predominate and whether the class

4  action is superior to other methods of adjudication of the controversy, a court should

5  consider:

> (A) the interest of the members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against
> members of the class; (C) the desirability or undesirability of concentrating
> the litigation of the claims in the particular forum; (D) the difficulties likely
> to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  In this case, individual damages are small, and class members

would be unlikely to litigate claims on their own.  In fact, no other claims have been filed

based on Omnipak's broadcast facsimile.  Based on the recency of the statute, potential

class members may be unaware of their legal rights.  Defendant argues that potential class

members could sue individually because the CPA provides for recovery of attorney's

fees.  While attorney's fees are available for Washington plaintiffs, they are not available

under the TCPA.

The parties have not identified any difficulties likely to be encountered in the

management of this class action.  This Court is an appropriate forum for this action

because plaintiff seeks to represent a Washington subclass.

As with the commonality and typicality elements, defendant reiterates its argument

that the issue of whether permission was granted will predominate.  As set forth above

regarding the commonality element, the class will share numerous factual and legal

issues.  Also, common legal and factual issues will underlie the issue of whether the

facsimiles were unsolicited and whether the recipients voluntarily provided their

facsimile  numbers for public distribution.  Accordingly, and based on the findings set

1  forth above regarding commonality and typicality, the Court finds that common issues

2  predominate.

3       Defendant argues that class action treatment is not the superior method of

4  adjudicating this case because damages for the class could be largely disproportionate to

5  the harm caused.  Defendant notes that with a class of potentially 3,000 members and

6  damages ranging from $500 to $1,500 per member, it could face damages of $1.5 million

7  to $4.5 million or more, grossly disproportionate to the loss of a little ink and toner.

8  Defendant's argument, however, is actually a challenge to the statutory amount of

9  damages, set by Congress, rather than to the best method of adjudicating this case.  If the

10 claims were adjudicated individually, defendant would owe the same amount of damages.

11 Rather, it is hoping that if no class is certified, it will avoid damages for the vast majority

12 of its violations.  The Court will not decline to certify a class on that basis.  Furthermore,

13 the class size is a direct result of defendant's large number of violations, for which it

14 should not be rewarded.  See, e.g., ESI Ergonomic Solutions, LLC v. United Artists

15 Theatre Circuit, Inc., 203 Ariz. 94, 101 (2002) (reversing denial of class certification for

16 TCPA claims; rejecting argument that potentially large damages for the class should

17 preclude class certification).  In addition, the Court has discretion to ensure that the

18 amount of damages and attorney's fees are reasonable.

19      Defendant also argues that the potential for a large damages award is

20 unconstitutional.  Although that issue will need to be addressed, it will not prevent the

21 Court from certifying the class.  Instead, it will be better addressed if liability is

22 established and in the context of determining the appropriate amount of damages.

23      Accordingly, common issues predominate and proceeding as a class action is a

24 superior method of adjudicating the claims.  Certification under Fed. R. Civ. P. 23(b)(3)

25

26 ORDER GRANTING IN PART AND DENYING IN
   PART MOTION FOR CLASS CERTIFICATION - 14

1  is warranted.

2  **E.    Conclusions Regarding Class Certification.**

3          The Court finds that plaintiff has met the class certification prerequisites of Fed.

4  R. Civ. P. 23(a) and shown that the proposed class may be maintained pursuant to Fed. R.

5  Civ. P. 23(b)(2) and 23(b)(3).  Accordingly, the Court certifies the following class:

6          All persons, excluding those with whom Omnipak had an established business
           relationship, who received an unsolicited advertisement promoting "Omnipak's
7          Summer Bag Special is here" via facsimile from Defendant during the period of
           time defined by the applicable statute of limitations.

8
9  The Court certifies a nationwide class for the TCPA claim, and a Washington state

   subclass for the WUTA and CPA claims.
10

11                              **III.  CONCLUSION**

12          For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

13 plaintiff's motion for class certification (Dkt. #23) and certifies a class as set forth in this

   order.
14

15

16          DATED this 23rd day of January, 2007.

17

18                              _MVr S Casnik_

19                              Robert S. Lasnik
                                United States District Judge
20

21

22

23

24

25

26 ORDER GRANTING IN PART AND DENYING IN
   PART MOTION FOR CLASS CERTIFICATION - 15